We'll hear argument first this term in Case 09-907, Ransom v. FIA Card Services. Mr. Burke. Thank you, Mr. Chief Justice, and may it please the Court. In 2005, Congress passed the Bankruptcy Act. It made a policy decision to limit judicial discretion on a case-by-case basis in the area of reasonable and necessary expenses. It did so by creating a formula that entailed an aggregate set amount of expenses for an individual. Now, Congress could have created this from scratch. It could have used an arbitrary figure, but instead there were figures that the IRS already had based on Census Bureau statistics that said nationwide in a certain area an individual would spend this much a month on average. In the case of Mr. Ransom, that's approximately $2,500 a month. Forgetting about how it's divided up, if I had 100 people come in and answered the following five questions the same way Mr. Ransom did, and that's age, location, household size, gross income, and if you have a vehicle, how many, they would all get a $2,500 standard aggregate deduction, which works out to $150,000 over a 5-year period. Now, the crux of this is whether or not courts are allowed to dig in and cut out pieces of this standard aggregate amount. Alito, why is that the crux of it? Congress made reference to the local standards, right? Yes. And were the — was the commentary in the collection financial standards in existence at the time when Congress enacted this provision? There was a collection financial analysis that was in place, and it was noted in 1998 as a prior version of the bill that ultimately wasn't passed. And that explains what the IRS understands the local standards to mean, isn't that right? I would disagree with that. I would say — well, it would explain what the IRS means, but that's where I would end it, because the IRS standards are used to collect taxes. They're discretionary. They just don't work. Well, I understand that, but Congress decided to make reference to the local standards in this bankruptcy provision, didn't it? Standards. Yes. And at the time when it did that, there was official IRS commentary regarding the meaning of those standards, correct? For the IRS to use in collecting taxes. And your argument is that Congress intended to adopt the standards promulgated by the IRS, but not the IRS's interpretation of the standards. Correct. Not their methodology or interpretation. Doesn't the chart say ownership costs? Yes. And you would read that to mean non-costs as well? I mean, if the table is called ownership costs, then why not use the IRS definition of what costs are, and that definition says what loan payments and lease payments. Because we have to look at it as a standard aggregate. And what I mean by that is the bankruptcy code doesn't define ownership costs. An ownership cost could be the replacement value. It could be buying a new vehicle. It could be the costs associated with making payments on a vehicle. What that average number is, in this case $471, is a nationwide figure that somebody would spend on average in a month. It doesn't mean that any one individual spends that amount. Scalia. Isn't it the case that even on the other side's interpretation of it, it doesn't come down to actual costs anyway? Isn't it the case, or do I misunderstand it, that so long as there is one individual paying $471, you get the entire deduction? That's their position, or even $1. Even one payment of $1, you get the entire deduction. So to argue this case as though it's a question of whether you actually expend the money that you're getting the credit for is simply false. You don't do that under either side's interpretation, right? Again, I would perhaps say, Mr. Burke. I'm trying to help you, Mr. Burke. Mr. Burke, before you respond to that question, isn't it so that in the event that Justice Scalia just proposed, the trustee could propose an amendment to the plan to reflect that that cost is no longer being incurred? The cost has never been incurred. That's the point. My question is, in the situation that Justice Scalia proposed, it's not automatic that the $471 gets deducted because there could be proposed an amendment of the plan to reflect that that is no longer any expense for ownership. In the situation where there is a dollar, of course, an amendment can be made. But, see, the dollar doesn't show up in the means test. The means test is the aggregate. But it isn't automatic that because there is one payment, then forever, in the rest of the 5 years, he gets to deduct the $471. That's what the lower court said. Excuse me. What happens under the tax law? Do they make an adjustment under the tax law as well? Under the tax law, you get a standard deduction, different than here.  Scalia, so that they – what is suggested is that you look at it and apply the IRS's approach as to whether you get into the chart, but then you don't use the IRS's approach when the trustee takes you out of the chart. Is that what you think is the law? No, that's not what I think is the law. What I'm saying is Congress has given, in this case, an individual like Jason Ransom $150,000 over 5 years to spend. They are not saying whether he actually spends it in any one category. For instance, the car ownership might be equate to $28,000 over 5 years. Rent might be $1,000. That's $60,000 over 5 years. Congress did not say go back and make sure Mr. Ransom is spending every dollar. These are averages across the nation. And when it comes to a car ownership expense, we're not saying spend $471. Oh, you have no payment? You didn't spend anything for 5 years? No. What it's saying is over 5 years, I have a cost associated with owning that vehicle, whether it's a loan or lease payment, whether it's replacing the vehicle, whether it's major repairs, on average across the country. Breyer, you do, you do, but the difficulty that I don't get the answer to Justice Ginsburg's first question. Of course, you have all kinds of costs dealing with ownership, but what the IRS says, what it says in the statute, is you're supposed to take the applicable costs from IRS. And what it has on page 5A is it has something called ownership costs. Correct. It defines those as $471. Correct. And then on 3A, where it says what ownership costs are, it says the transportation standards consist of nationwide figures for monthly loan or lease payments referred to as ownership costs. So when I read that, I thought ownership costs means monthly loan or lease payments. Nothing else. Now, you have all kinds of other things, it's just these words, ownership costs, don't refer to those other things because of that definition given right there. That's what I thought Justice Ginsburg was initially asking. Yes, I was. And how do you get out of that, what I think of, very, very clear language, which says what these standards refer to. Because the standards refer to the numbers. It's a chart. But it doesn't, for example, suppose you buy a dozen apples every month and they cost you $48 extra. You're not going to say the ownership costs refer to the apples, even if you decorate the car with them. I mean, ownership costs refers to lease and loan payments, nothing else. Scalia, what's the language we're dealing with, Mr. Burke? Do you want to quote the language to us? Nobody's quoted the language. What does it say? What the statute says is the applicable you shall get, mandatory, the applicable amount specified based on where a debtor resides, that's the statute. The applicable amount specified where? In the national and local standards. Read the text of the statute, would you please, for me? I couldn't even get it from your brief. You had to refer me back to the petition. Why isn't it in the appendix to your brief or printed in the beginning of your brief instead of kicking me back to dig out your petition? The debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the national and local standards. Amount specified under the standards. Specific amount. Applicable modifies amount specified. Applicable amount specified, not the amount specified if applicable. Correct. Based on where a debtor resides. Now, the only way a court can say that an individual has to have a debt on a car to get this deduction is two ways. One. Alito Look at the local standard, which is on page 8 of the appendix to your brief, right? And all it says is ownership costs, first car, $471. That's the relevant text, isn't it? Yes. What if a person leases a car? Do you think they get ownership costs? Yes, because they get the cost whether they owe on it or not. But they don't own the car. So how can they get ownership costs? There's a different definition. Ownership doesn't mean — it can mean possession, but. Where do you get that from the collection financial standards? No. The collection financial standards say you get the lease, you get the deduction if you have a loan or a lease payment. Where do you get the definition that somebody who leases something owns it? I don't. I'm not sure they do own it. Then how do they get ownership costs? Because you have possession of it. It's based on having the item, this cost associated with having the item, whether it's paid off or not. If somebody rents an apartment, do they own the apartment? Probably under ownership, their possession is some type of an ownership. It may be just possessory. You're going to get ownership costs if you have a loan or a lease payment. Breyer, is there something wrong with the IRS saying what they mean? It says ownership costs means monthly loan or lease payments. The problem is there's something — that's what it says it means. Now, is there something illegal about it defining ownership costs in that way? No. For a collection of taxes, there's not. But if you're going to use — start digging into the manual, you might as well bring it all in to 707B, and as we discussed a little earlier, there was language that said the collection financial analysis should be brought in, but that was deleted in the final version. But we're not just limited to — it says you're supposed to look at the form. It says ownership costs. So the only thing you'd look at the IRS for is the manual is to define ownership costs, and they say ownership costs means those two things. Why do — there's no reason to limit it. If you're going to — the text doesn't say — it says national and local standards. It doesn't discriminate or give disparate treatment to that one item. If you're going to give it to one item, then it can be pulled in and it should be — the same treatment should be given to all items, and we should have to prove some type of a— Ginsburg. I don't follow that. The simple thing is to just — what does the word costs mean? And then you look to the IRS manual and it tells you costs means loan or lease payments. To collect taxes, that's how they defined it. But in the statute, it says you get local standard amounts specified. It does not stretch it and say under the IRS's interpretation. That language was taken out. And if we were to use the IRS's interpretation, here's the whole problem. It's discretionary. It goes up and down. It's based on an IRS revenue agent. It — let me give you a separate example. Nobody—  I would say with this, the $471 is derived by looking at the average loan or lease payments nationwide. Then in addition to that, we know that the IRS has a separate category for operating costs that is meant to reflect costs of having a car that are not your loan and lease payments. So between those two things, why wouldn't we say that ownership costs means your loan and lease payments, that operating costs means your other costs of having a car, and that you get the operating costs if you have a car but don't make loan and lease payments, and you get the ownership costs if you do make loan and lease payments? Because to reach that, you have to go into the Internal Revenue Manual. It's not in the statute that says you have to owe on it to get it. And if you go into the Internal Revenue Manual, let's look at operating expenses. What it says in collecting taxes, and it's in the Joint Appendix at pages 83 through 88, but what it says when it comes to local, national, and other expenses, an internal revenue agent has discretion. You only get these expenses — this is the overall idea — if they produce income or if it's for health and welfare. And so when we look at the Joint Appendix, page 88, section B, under the local standard transportation expenses, when it talks about operating costs, which is something you just mentioned, it says you only get transportation expenses that are used to produce income or health and welfare of an individual or their family. And thus, the fact that you own a car, the IRS, under its discretion, can take away the operating costs if it's on four cinder blocks in your backyard. You're not incurring fuel costs, mileage costs. You're not probably paying registration or any of those other operating costs. The IRS agent, under their manual, can take away that expense. So why stop and say, well, we're just going to look at the ownership costs, and all they're saying here is if you owe on it, you get it. If you don't owe, you don't get it. Let's not look at anything else in the IRS, the internal revenue manual, which is a 39-part, 500-page document that in some ways is almost incomprehensible and directly. Ginsburg, the — it's unusual to allow a deduction for the purpose of calculating disposable income, although you don't have any expense. I understand how you get to that conclusion with respect to car ownership. Is there any other provision that in calculating disposable income, you are not incurring or allowed a deduction for an expense that you don't incur? If the Court understands my view that Congress gave you a deduction. No, and the question, is there anything else that works like this? You don't have the expense, nonetheless you have the deduction. Any — I mean, there are a whole list of deductions, expenses. Is there any other one that works this way? It doesn't matter whether you have the expense. In fact, you just get it. For example, Mr. Berk, what would happen if you didn't actually have any out-of-pocket medical costs? Could you still claim a deduction for out-of-pocket medical costs? I'm saying you get all the deductions, whether you owe on it or not. Is there a specific one besides the car ownership that says you have to owe on it?  Kennedy, is there a split of the court's — is the answer that you just gave supported uniformly by the courts that have looked at this? There's about 60 published cases. They're split almost 50-50. Actually, it's more than that. In other words, even on this point, they're split? This is one line that they've looked at in the cases. It basically … I don't understand what you're saying. He asked are they split 50-50 on the point that's before us here, yes or no? Yes, it's split about 50-50. Do they apply — do the courts apply the housing and utilities listed amount, whether or not you pay for a house or not, whether or not you rent? There's two published cases I'm aware of, and both allowed it. One, somebody had military housing. One, the house was paid off. Both courts said you get it under the local standards. But the IRS manual would not give that to you, because under the local standards, the IRS manual says you get the specific amount or your actual payment, whatever is less. Of course, once again, Mr. Burke, this is — I don't know why you don't point this out. This is not the difference between your position and the position of the other side. You get the deduction for the other side as well, whether or not you're making the payment. Now, maybe it can be adjusted by the trustee, but as far as the statute is concerned, so long as you make one payment of $1 under their theory, you're entitled to claim the deduction. Isn't that right? That's correct. Kennedy. Now, my question, Mr. Kennedy, about courts was not with reference to the car expense. It was reference to the hypothetical or to the issue proposed by one of my colleagues. He said, what if you don't — Justice Kagan, suppose you don't have the medical expense, and the answer — and your — and I wanted to know if your answer is supported uniformly by the courts that have looked at this, or if there is also a split on that point. I apologize, I'm not understanding that. No, every other expense deduction that I've seen besides the car ownership, somebody gets it. And they get it whether or not they incur that expense or not. Correct. In other words, food. You don't have to say, well, he did spend this much money on food, so he gets the standard deduction. Correct. If he doesn't eat as much as somebody else, he gets the same deduction, right? Correct. Or if he lives at home and mom cooks for him. But, Mr. Kirk, Mr. Berger, even you would say, is this correct, that if you don't own a car at all, you can't claim the car costs? Yes. Is that by reason of the Internal Revenue Service manual, or is it by reason of the Bankruptcy Code itself? It's by reason of the Bankruptcy Code that refers to the standards, and the standards specifically say you have one car, no cars, and you get a public transportation or two cars. You just pick the one. So it's in the chart that you claim? Okay. What if you own a car, but it's completely inoperable and it has no value? You buy it for a dollar, it's a junk car, and you're planning possibly to restore it at some point. You get the deduction then? Based on a strict reading of the code, you get it. Now, would the IRS allow it? Again, that's a discretionary standard. But any time you have an objective test, there's going to be line drawing and proceeding and perceived unfairness on the outskirts. And would your answer be the same if the allowance was set, the decree was made, and the debtor then went out and bought the junker to put in his driveway just in order to get the $400-plus a month, or would that be deemed an evasion of the law that could be addressed by the Bankruptcy Court? It can be addressed by the Bankruptcy Court, and that's the beauty of the statute. We don't need to go into the Internal Revenue Manual. We just need their tables, because there's a provision, 1325a3, that deals with good faith. So if it appears somebody is not acting in good faith, then a court can find evasion. We've got about half the courts in the country agreeing with you. And so you've read all those arguments. And what, in your opinion, is the best one on the point, again, where I'm stuck, which is Justice Ginsburg's original point? I mean, I can think of millions of examples. You have a form that says, the employer says entertainment expenses, then it defines entertainment expenses as food and transport, and they leave out movies. You know, or you could have vacation expenses, and vacation expenses are defined as transport and hotel, and they leave out meals. And here we have a definition of ownership expenses, and they say leasing and loaning, and they leave out other forms of ownership. Now, the argument is, well, that's what they mean by it, so that's what's applicable. Now, what's the best argument against that in those 50 cases? Why is it trying to get an expense which isn't loan or lease? Have you any more right to it than if you tried to get an expense to my totally irrelevant apples? I mean, it doesn't fit within the applicable definition. What's the answer? The means test is a form. And if you look at the form, the means test is a form. And if you look at the form, it just says. Ownership. That's it. There's no definition in the form. But they two pages earlier, they say what they mean by the word ownership. Not the IRM does. Yeah. Not the statute and not the B-22 form that's filled out by debtors. So you're half the Court say, oh, you just sort of imagine what ownership expenses are and anything that they can fall within that general English language word is what they can deduct. Is that their approach? Because we no longer say cut off the definition. Cut off the definition from the word ownership. Don't use it. So what do we use to define what ownership is? We don't have to. Congress gave standard amounts for an industry. No, I know, but it's for ownership. It's not for, for example, whistling. It's for ownership. So how do we define what that $471 attaches to? Do we use a State common law definition or something? How have they done it? Because you can take it as a bunch of variables. It's not in the bankruptcy code. So it could be replacement costs. It could be major repairs. It could be. Is this a problem distinctive to your case? Doesn't the other side have the same problem with ownership? Don't they acknowledge that even if you're leasing the car, you get the deduction? Yes. I don't see why this is distinctive to your case. It's a problem both sides face. Yes. And we don't avoid it by coming out against you, do we? No, we don't. Why? What if the definition of ownership costs was moved into the local standards themselves? Would the outcome be different then? Are you saying in 707b? No, it's moved from the CFS to the local standards, which are referred to in the code provision. My answer would still be the same because that's not a congressional formula. That's a form that comes off the Department of Justice website, which administers the U.S. trustees program, and that's their litigation position. Mr. Burke, if the table said loan and lease costs, you wouldn't have a case? If it said, instead of ownership costs, if it said loan and lease costs, then you would sit down, you would say I'm not entitled to that deduction? No. I would say an individual who owns a car, whether they owe or not, gets the deduction because it's part of this aggregate standard. Even if it's called loan and lease costs? Correct. It's not a breakdown on what any one individual has. It's an aggregate. You may want to save the rest of your time, Mr. Little. Thank you. I will. Thank you, counsel. Ms. Maynard. Mr. Chief Justice, and may it please the Court, the Bankruptcy Code precludes an above-median income debtor, like Petitioner, from shielding from his creditors $471 a month for a car payment that he does not have. A debtor with food costs, housing costs, utility costs, by getting his parents to pay for those things and still take this deduction? The statute allows a debtor to take an applicable monthly expense amount. So if the debtor truly has no food costs, then the food standard would be not applicable to the debtor. Your adversary said that only two courts have addressed this issue and have permitted those deductions. So under what reasoning would we apply a different standard to the car costs as opposed to those other costs? Well, I think with respect, I think the cases he was talking about were housing. Housing. Right. So housing and car costs are part of the local standards. Food, clothing, house cleaning supplies, those are part of the national standards. The – in our view, the text that goes along with, that accompanies the tables, which is not the Internal Revenue Manual, it's just the pages reprinted at 1a to 3a of our brief, the collection financial standard, the preparatory explanation for what the tables mean, in our view that is – goes along with incorporated into the national local standards. The national standards, Justice Sotomayor, are allowed as long as you have, under the calculations as explained in the standards, under the national standards, a debtor would receive the allowance in the table as long as they have any such expense. So regardless of amount. However, if they have no such expense, then they are taken out by the statutory language in the means test, which says that the standard must be applicable to the debtor. And so if they have pre-purchased their food expenses, so long as they have $1 of food expense, they get the entire expense, even though they are not incurring it. And there are things like, you can pay up, you know, have the grocery delivery of food every month and you can pay in advance, and if you are paid up, you still get the full food expense that is allowed. No, Your Honor. I think if over the 60-month period looking forward you know that you are going to – you have already paid up for your food for the next 60 months and you are not going to incur any additional food expenses, no, then in that situation the standard would be inapplicable to you. You would be having no, in that hypothetical case. Roberts What if you paid $1 for food, you would get the full amount for 60 months? Under the standard. That's the way the standards operate, Your Honor. I haven't seen any cases litigating the fact that the food expense. So your argument leads to a result that's just as absurd as your colleague's result on the other side. I don't believe so, Your Honor. I mean, that was a big part of your argument. You said his position leads to an absurd result and yours is just as absurd. I don't think so, Your Honor, for this reason, which is that the national standards are food, clothing, house cleaning supplies, things that you expect every debtor to have. You don't see much litigation about those expenses. The local standards, however, operate differently. In our view, and our view is different from the government's, Justice Scalia. In our view, under the local standards and the way that they apply as explained in the collection financial standards, is that the debtor is allowed their actual expense for the local standard or the amount in the table, whichever is less. So in the hypothetical. Sotomayor Where does it say that? The debtor's monthly expenses shall be the debtor's applicable monthly expenses or the debtor's amounts specified under the national and local standards. So the national and local standards have amounts listed. Where does it say you take only the actual, not the national or local standard? I read that text, Your Honor. Again, the Court doesn't need to decide this maximum cap issue to decide this case because the Petitioner has no expense whatsoever, and so it's not applicable to him. But in our view, Justice Sotomayor, in our view, you get it from the language of the statute that says the debtor's applicable monthly expense amounts specified under the national standards and local standards. And the way that we understand the national and local standards to work is, if you look at page, it's explained on page 1A of the petition to our brief, the red brief, maximum allowances, it's the third paragraph down, maximum allowances for housing and utilities and transportation known as the local standards vary by location. Unlike the national standards, the taxpayer is allowed the amount actually spent or the standard, whichever is less. Sotomayor, but that's not what the provision at issue here says. It says you use the amount specified under the national standards and you use actual for everything else. That's what the statute said. So now you're trying to move the actual into the first half of the test? No, Your Honor, that's not how I understand the text. The text provides the debtor. Why would it even bother? Why don't you, if what you're arguing is that only actual expenses are what you can claim, you wouldn't need the first half? Yes, you would, Your Honor, because what the statute's purpose here is, I mean, I think it's helpful to step back. Chapter 13 sends one to Chapter 7's means test for the purpose of calculating the amounts reasonably necessary for the maintenance and support of the debtor. And Congress chose to import the methodology of the national standards and local standards as a way both to set the categories of expenses that debtors could receive payments for and, with the case of the national and local standards, to set the amounts. They were worried about capping upper discretion, because Congress, it's quite clear from the text and the legislative history, was concerned about above median income debtors taking luxurious expenses. So what you're saying is that the statute is that the debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified as a maximum. You would have to add maximum somewhere there. No, Your Honor, because the amount under the national standards, as the national standards operate, is an allowance, not an actual, and the amount under the local standards as they operate is the amount actually spent or the amount in the table, whichever is less. But again, your position penalizes debtors who pay their expenses in advance. So you're saying that the bankruptcy code would think that's a good thing, that they're not incurring debt that they can't afford to pay off, but instead, to the extent they can, they're paying expenses in advance. Why should somebody who does that be in a worse position than somebody who takes out a loan they can't afford to pay back? Money is fungible, Your Honor. So to the extent the debtor has incurred expenses before going into bankruptcy, instead of, as here, paying off his more than $85,000 in debt, he's paying off his more than $85,000 in credit card debt, he should be able to use it. Roberts, Well, he hasn't incurred expenses. That's the whole point, I guess, that he's paid for something. He used his money, perhaps, to purchase his car outright instead of to pay down his credit card debt. And so he has a salary of $50,000 and he has a credit card debt of $85,000 and he owns a two-year car, two-year-old car outright. He should not be able to deduct as a measure of his reasonably necessary expenses for his maintenance and support over the next 50 months, $28,000 that he doesn't need for a car payment that he can't afford. Roberts, Even though he can do it for everything else, he can do it for food, he can do it for housekeeping expenses, he can do it for personal care expenses. He can even do it, the other, the final category is miscellaneous, so he can do it for anything. Well, the miscellaneous is all those numbers are capped and the legislative history makes clear Congress thought all those numbers would actually effectively act as caps. In other words, to the extent there was debate in the Congress, Congress was concerned that these numbers were actually too low, not that they were going to give anybody a windfall. But to the extent that you're proposing is that every debtor has to go to the bankruptcy court and show what their monthly food bills have been over what period of time, how much their personal supplies have been over what period of time, how can you calculate forward what they're going to spend on a monthly basis for each of those items? Isn't that the reason the tables are used, so that you don't have to do that? Yes, Your Honor. And in the national standards, which all the items you just list are national standards, under the national standards you don't do the actuals. On page 1a, as it explains, allowances for food, clothing and other items known as the national standards apply nationwide, except for Alaska and Hawaii. Taxpayers are allowed the total national standards amount for their family size and income level without questioning amounts actually spent. For, yes, for those hard-to-calculate items, you do, our position is you do get the amounts in the chart. For local standards, the local standards, however, which include home, mortgage, lease expenses, utilities, and transportation, which include both ownership costs and operating costs, you get the actual or whichever is left. I must say, your position is more logical than the position that you read in some of the instructions applicable to the chart that's referred to in the Bankruptcy Code, but not others. I mean, it seems to me if you're going to read in the requirement that you have to have made a lease payment, you should also read in the requirement that you're referring to now, which would mean your deduction is limited by the amount of your lease payment. I don't see why you – is there any reason why one would read in the other one and not read in yours? Not in our view, Your Honor, because in our view the chart is ambiguous about what the number stands for. And so in the national standards, the text, the prefatory text explains that the amount is an allowance if you have the expense. In the local standards, the prefatory text explains that the amount operates as a cap. But the important point for this case, Your Honor, is that you don't have to decide anything about the national standards, because Petitioner is left at the statutory door. He has no applicable monthly expense amount for operating. Kagan in what would happen if the debtor had a car that was 200,000 miles, 200,000 miles, and it was going to break down, you know, within the next 5 years? Would the debtor then be able to take the deduction? If the debtor owns the car outright at the time they file for bankruptcy, they would not get the deduction. Even though if you look ahead, if you project forward, it's pretty clear that the debtor is going to have to incur those expenses. They would not get the deduction under this calculation. However, under this Court's decision in Lanning, when one goes to project the disposable income, it's conceivable that the debtor could prove that it's known or virtually certain that they will need a new car and that that could be accounted for. But also, the Bankruptcy Code in 1329 allows for modification of a plan. And so when the time arises that their car conks out and they need a new car, they can move to modify their plan.   miles, and it was going to break down, you know, within the next 5 years? Well, the modification works for Chapter 13, but it doesn't work for Chapter 7. Is that right? Well, they make that statement in their reply, Your Honor, but I'm not sure exactly what they mean by that, because in Chapter 7 this test is being used for a very different purpose. It's the gateway. It's a presumptive test for abuse. And so, again, our reading makes perfect sense in that context, because what you want to know is, does this debtor actually have monies it can repay, its credit, or should it be in? Sotomayor, I'm sorry, are you finished? I was not actually having answered her question. Well, why don't you finish answering the question? Finish. So in Chapter 7, once you, if you decide it's presumptively, not presumptively abusive and you stay in Chapter 7, then Chapter 7 is a liquidation. There's no ongoing plan. So I don't think you, if all of your non-exempt assets are liquidated, your creditors are paid off and then you're discharged, if 3 years from now your car clunks out, you're just like you and me. You're not in bankruptcy. You just, you try to make do. I think his point, I'm trying to work out what was his point, and I don't blame him for this, but as he's trying to figure it out, he says, look, this whole thing was written for a different purpose in the IRS. And if we start reading all those things from the beginning into the tables, we're really going to get into a mess. For example, we are going to give people deductions when they have lease payments, even though they're not owners when they have lease payments. The company owns. It's not even an ownership expense, but it does say, use a lease payment, and then it has all these other things. So forget it. Do a simple thing. It says ownership expense. You go to the Registry of Motor Vehicles and you say, is Smith the owner? And they'll tell you yes or no. And if the answer is yes, he deducts $471. Sometimes that's too little, sometimes that's too much. But once we depart from that, we're really in a nightmare of trying to figure out what all these things mean that were written for other purposes. So what do you say? I say, Justice Breyer, that there's nothing in the statute of legislative history that suggests this was meant to be an overall budget for above-median income debtors. This was about capping upward discretion and limiting the expenses available as reasonably necessary expenses for above-median income debtors. And I think that point is made perfectly clear by the fact that you can compare it to what happens now to a below-median income debtor. A below-median income debtor in the same situation as Petitioner, who owns his car outright, would be allowed no amount as an expense for his vehicle because he doesn't have an actual expense that's reasonably necessary. And I think that the 2005 Congress would think it was a senseless result to hear that Petitioner gets $471 above-median income debtor, the very class of debtors with whom Congress was concerned in the 2005 amendments, to shield from his creditors over the life of a plan when he has no comparable expense. Kennedy, what we're talking about is a paradigm of someone who we're comparing someone who has a $470-a-month car payment, and he gets the deduction. Why is that in light of the second sentence, let's see, the third sentence of the of the debtor should not include any payments for debts? I mean, that would be the car company. Has that point been litigated? That sentence is somewhat of a conundrum, Your Honor. And I think that the Court doesn't need to decide the meaning here, because whatever it does, it doesn't get Petitioner within the Romanette II calculation. It's got no meaning. No, but it would eliminate the anomaly, one of the principal anomalies, there are many anomalies in each position, but it would eliminate one of the principal asymmetries that seems to concern the counsel in the court. Well, my understanding of that provision is that it serves two purposes. It serves two purposes. The first is that it makes clear, in the back of our brief we have the other necessary expenses from the IRM, and on near the back, page 25a, two of the categories of other necessary expenses are secured or legally perfected debts and unsecured debts. So I think the otherwise, the notwithstanding sentence makes clear that Romanette II should not capture those other unsecured debts and secured debts, that it's the very purpose of this whole calculation to figure out how much money you have to pay those things. The second purpose the sentence serves is to make sure that there is no double counting, because Romanette III, the very next provision in the means test, allows the debtor to claim monthly payments for secured debts. Now, many car loans are probably secured debts, and in our view, if you actually have a car loan, now, remember again, he neither has a car loan nor a car lease payment nor any kind of ownership payment. But if one actually did have a car loan that was secured by the car, which I think is the vast majority of car loans, in our view, the debtor expenses nothing for that under Romanette II, and only the actual amount of that debt under Romanette III. Ginsburg, I thought that the general position was you get either the actual payment or the 471 of whichever is higher. Whichever is less. I think that's my understanding of how the local standards work, Your Honor. I think then as a practical matter, that really will end up only applying to car leases with respect to transportation ownership costs, because I think that the notwithstanding senates removes secured car loans from Romanette II and has them calculated under Romanette III, where there is no comparable cap. And the point at issue in this case doesn't involve the interaction between Romanette II and Romanette III, because no matter how those two things interact, when the debtor has no payment whatsoever, he ought not to be able to claim any car ownership costs, because what we're trying to figure out is what amounts does he reasonably need for his maintenance and support. And this question is a very important question. This scenario happens a lot. In the 2007 study that U.S. trustees did at Congress's request, to which Petitioner cites in his reply brief, the average overpayment of a debtor claiming this transportation ownership expense was $335, which is a lot when you're talking about the standard in the chart being $471. There are many debtors who are getting this expense either above their amount or when they have no such expense at all. And so even if the Court doesn't resolve these other issues that are implicated by this case, the decision here is a simple one, which is this debtor has no applicable monthly expense amount for transportation ownership costs, and he shouldn't be allowed to expense any amount for that. If there are no further questions, the Respondent requests that the Court would confirm the judgment below. Thank you, counsel. Ms. Zaharsky. Mr. Chief Justice, and may it please the Court, the only question this Court needs to resolve in this case is whether the vehicle ownership expense is applicable to Petitioner. The answer is no. The ownership cost is for loan and lease payments, the cost of acquiring the vehicle, and he just doesn't have any payments of that type. To allow him to pretend that he does would create absurd results. He'd be able to shield approximately $28,000 from his unsecured creditors, and he'd be better off than lower income Chapter 13 debtors. We just don't think that that's a result Congress intended. We don't think it will have any effect. If he paid $1, he'd be able to shield $27,999, and you're comfortable with that result. Well, that goes to the question of whether the amount on the table is the amount to be used or a cap on actual expenses. And I understand your brief to say it was the amount, you get the whole amount, not simply as a cap. That's right. Now, of course, we haven't seen, the Executive Office for U.S. Trustees has not seen any $1 payments. It doesn't know of any such commercially available payments. It suspects that payments would be higher than $1. $1 counsel is to lead to the extreme hypothetical that would flesh out your position. What if it were $10,000 and the amount would give him $30,000? The trustees have probably seen loans like that. What I'm saying, Your Honor, is that there are many circumstances in which an expense amount is a standard amount, but you still need to make a threshold showing that it's applicable to you. And if I could give the Court one example, when an individual does his Federal income tax forms, you can take a deduction for your dependents, but you can't just take a deduction for any child you have. You have to take a deduction, you can take a deduction if the person lives at home with you for more than one year and you have a certain amount of expenses to support them. And that is a standard deduction that you get on your tax forms. The IRS doesn't ask everyone to figure out their actual costs. It is the case in real life that there are allowance amounts that are average amounts that are given to people once they meet the criteria, and that's what we're saying happens here. Now, that is, again, only a disagreement as to what you do with people who actually have vehicle ownership expenses. Scalia Why isn't one of the criteria, the provision that says maximum allowances for housing and utilities and transportation known as the local standards vary by location, and unlike the national standards, the taxpayer is allowed the amount actually spent or the standard, whichever is less. Why doesn't that apply? Saharsky Well, because, Your Honor, in that case, it's the IRS commentary we're referring to that's on page 1A of the red brief appendix. And that what that's referring to is it says the amount actually spent or the standard, and that's distinguishing between the amount that's actually spent or the standard, which is the standard amount in the table. Right. And of course, we look to what the text that Congress enacted in the Bankruptcy Code, and that says that the debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the national standards and local standards. Scalia It's not applicable. It's not applicable if, in fact, you haven't spent that much, just as you claim it's not applicable if you have no payment at all. Saharsky I think that it is — it would further Congress's purposes to say that you have to — that you look to the actual costs that the debtor has, but we just don't think the text goes that far because it says that if the expense amounts, the category is applicable to the debtor, that then you use the expense amounts specified under the table. But, again, that's not applicable. Kennedy The gravamen of Justice Scalia's question is why are you running away from 1A, which is what Respondent's counsel relied on, and if that were clearly relevant to this statute, it would seem to me to answer the question. Are you saying we don't look at this because it's simply an interpretation, it's not a regulation? What is — what is — in your view, what effect do we give to this language, Justice Scalia quoted, nothing at all? Saharsky It would not be relevant in the bankruptcy context in our view, and the reason is because the statutory text refers to the standards, and in our view, you can look to the IRS commentary to see what the standards mean, what their scope is, as Justice Breyer was discussing with his Apples hypothetical. But this additional language is guidance to IRS agents in tax delinquency cases about how to collect taxes. Kennedy Suppose we think the word applicable is ambiguous and difficult to construe. Do we then look at this language at 1A, or do you say it's irrelevant in all — in all respects? Saharsky Your Honor, you could look at this language, but we think that it reflects not the standards, but how the IRS uses the standards in individual cases of tax delinquency. To the extent that the IRS is defining what the standards are, what the scope of the standards are, for example, that ownership costs are loan and lease payments, of course we would think that you would look to that. But this additional guidance to IRS agents we don't think is what Congress meant when it said expense amounts specified under the standards. But we do think that the text could be read the way you suggest. Sotomayor So then you would be comfortable with a person who owns a house outright, who only pays $100 in utilities, taking the full amount of the housing and utilities allowable living expenses, because that's the amount specified? Saharsky Well, the housing and utilities expenses have been broken out into a mortgage and rent component and a utilities component. So in that circumstance, we would say the individual only is allowed the utilities component, but it would be the allowance amount that is specified. It would not be his actual amount. But again, this is a question that was not considered by the courts below. In fact, the Bankruptcy Appellate Panel said it is in footnote 20 of its brief, said this question is not in this case, it's not before us, whether you use the amounts on the table or whether you use the actual amounts. We don't think you need to respond. Roberts I should probably know this, but if you do have amounts that are excluded from the disposable income because of car ownership, if you actually have, in your point of view, expenses, do they have to go to the pay off the car loan or are they available for everybody? All the creditors. Saharsky They are not available for the creditors. The idea behind this calculation is that there, of course, are secured debts that have priority and then this calculation is used to figure out how much money is left to pay unsecured creditors. And the idea is that the debtor has certain expenses that he needs to keep money for himself so he can continue with the everyday business of life. For example, the car ownership payment is designed to ensure that a vehicle can still use and have access to a car. And if someone has a loan or lease payment, they need to be able to continue making that payment in bankruptcy. But if they don't have any such payment, then they don't have this need for this  Because they're not. Roberts But can he decide, let's say he has more food expense than is allowed, can he decide of the amount that would otherwise go on the car payment that he's going to pay some of that for the food expenses? Saharsky Well, certainly the bankruptcy court doesn't scrutinize, you know, what happens to that regard. What it's just trying to do is figure out the disposable income that is available to pay unsecured creditors that the debtor doesn't need. And I should just note, with respect to this question of whether there is an overall budget that the debtor is allowed, you know, that's certainly not the case in any of the other provisions that follow this applicable monthly standards and local standards. You have the actual other necessary expenses, actual continuation of taking care of chronically ill family members. And Petitioner himself acknowledges that he has to show that he has a car. So it's not the case that every debtor is just getting some set amount of money to do what they will with. Congress has referenced the standards. The standards break this out into certain expenses. It says just take the applicable ones, and we just don't think it makes sense. To interpret applicable in that circumstance. Kagan Mr. Harsky, could you explain to me the government's position on when a debtor with loan and lease payments gets to deduct them under Romanet II? In other words, this goes back to Justice Kennedy's question, the notwithstanding clause, and whether the notwithstanding clause effectively excludes all loan and lease payments from Romanet II. Harsky It does not have that effect, Your Honor. What it does is to take out the actual debt payments that are part of the other necessary expenses. These are on page 25A of the red brief that counsel on our side mentioned. These are other necessary expenses that are actual debt payments, and the local and national standards are expense amounts. We don't think that Congress defined those to be debt payments. So the function of the payments for debts language, we agree with Respondent's counsel, would be twofold. First, it would excise the other necessary expenses that actually are debt payments, which makes complete sense. You know, one of them is an unsecured debt payment, and you wouldn't want to consider that one of your expenses, because the whole point of the calculation is to figure out how much money you have left to pay unsecured debts. And then the other function that it serves is in Romanet III, because you're getting secured debt payments there to not double count them in Romanet II. Kagan But in other words, the loan and lease payments don't count as debt for purposes of the notwithstanding clause. They count as expense amounts. Harsky We say that those are expense amounts that are specified. They are not payments for debts. And I should note, because Justice Kennedy asked this question, that this was not something that was relied upon by the courts below. I don't believe that there is any definitive court of appeals opinion that goes through in detail what that provision is designed to do. So I would urge this Court that it need not resolve it in this case, and instead do what the court of appeals did, which is to say that just looking at the plain text, the word applicable means not everybody can get these amounts in the national and local standards, and it needs to be someone who actually has those payment amounts. The whole point of this part of the statute is to figure out what money is available to pay unsecured creditors, and it's payments that need to be made for expenses that matter. It's not whether the individual debtor has a car. I also note, just because it came up earlier and is a very important point, that to the extent that the Court only wants to look at the tables to figure out what are ownership costs, are they loan and lease payments, just looking at the title of the table, ownership costs, you need to have costs, looking at the fact that there are two different ones, there's ownership costs as opposed to operating costs, makes clear that some of the things that Petitioner suggests might be ownership costs are, in fact, operating costs. Roberts Thank you, counsel. Mr. Burke, you have 4 minutes remaining. Thank you. The means test knows when to say actual, when it wants to say actual. It didn't say actual in this case, it said applicable. Ginsburg Mr. Burke, would you explain one facet of this case to me? Given the deduction, the $471 deduction, disposable, projected disposable income comes down to $210? Burke Correct. Ginsburg As opposed to, it would be $600-some if you didn't count the $471. Burke Correct. Ginsburg Even though the disposable income figure was $210, the debtor was willing, the debtor proposed paying $500. Why did the debtor come up with a $500 figure when projected disposable income without the car ownership would be, if he gets the car ownership, would be only $210? Burke This is exactly why our view of the law works. The means test is a minimum amount. It's a bottom line quick figure based on standard deductions. It was $200 based on our calculation. If he's given his deductions based on age, location, et cetera. We then go back to I and J, and J, which is on page 44 of the Joint Appendix, is his current expenses. And if we look at line 13a, there is no vehicle payment. He's not taking $471. He took his income and expense, the bottom line was $500. He knew he had to pay at least $200. He's willing to pay the $500. He's not getting a $471 deduction because there's no car payment on his Schedule J. And if we look at the formula that way, the means test is a general form to give standard deductions, to give us a quick bottom line, and the debtor is either going to pay that amount or more based on his income and expense, and he would pay more if he really didn't have that expense. So if he didn't have a rent expense of $1,000 a month, it would show up on Schedule J that he didn't have $1,000. So his payment would go to $1,500 a month. That's the good faith that's involved in this case. Scalia, It would have to go to $1,500 a month, or he, out of the goodness of his heart, would decide to pay that amount? He's going to have to pay an amount of at least $200. It would be hard to confirm a case if he doesn't pay somewhere in that range. Fine. So why, why, why would we assume that he'll, I don't know, your client is an extraordinarily generous fellow. I don't think most people, when they go through bankruptcy, are going to cough up any more than they have to. It's the only way for the form and the law to work. The means test has a bottom line number. If you don't have one of those expenses, it shows up on Schedule J and it gives you a number. If it's higher, we think you should probably pay it, or in that range. If it's lower, Congress isn't saying you get away with it. It says you get out of Chapter 13 if you're not going to pay this amount. So the formula is just to come up with a bottom line. Nobody is shielding anything. It's all black and white on his current expenses. If he doesn't have it, he's not getting it. Alito, do you think that the Bankruptcy Code provision freezes the national and local standards to some degree or completely as they existed at the time when the statute was enacted? At the time the debtor files, those numbers are frozen. But the IRS could change? Otherwise, they can, going forward, they can completely change the national and local standards. The numbers, but not the structure. They can do anything they want when they're collecting taxes, but the numbers and I think the numbers change on an annual basis. Thank you, counsel. The case is submitted.